IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| CAROLYN PRICE, | ) | CASE NO. 1:21-CV-01172-CEH |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | CARMEN E. HENDERSON |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | MEMORANDUM OPINION AND |
| Defendant, | ) | ORDER |
| | ) | |

**I.  Introduction**

Plaintiff, Carolyn Price, seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 15). Because the ALJ followed the proper procedures and her findings are supported by substantial evidence, the Court AFFIRMS the Commissioner's final decision denying Price SSI and DIB.

**II.  Procedural History**

In June of 2017, Price filed applications for SSI and DIB, alleging a disability onset date of December 2, 2016. (ECF No. 9, PageID #: 255, 257). The applications were denied initially and upon reconsideration, and Price requested a hearing before an administrative law judge ("ALJ"). (ECF No. 9, PageID #: 197). On November 14, 2019, an ALJ held a hearing, during which Price's attorney appeared and an impartial vocational expert testified. (ECF No. 9, PageID

1

#: 92). Price did not attend the hearing. (ECF No. 9, PageID #: 74, 94–95). On January 15, 2020, the ALJ issued a written decision finding Price was not disabled. (ECF No. 9, PageID #: 71). The ALJ's decision became final on April 7, 2021 when the Appeals Council declined further review. (ECF No. 9, PageID #: 94).

On June 11, 2021, Price filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 12, 16, 18). Price asserts the following assignments of error:

> (1) The ALJ's finding that Plaintiff engaged in SGA and was therefore not disabled for the period from January 31, 2019, through July 27, 2019, the date she last worked, is unsupported by substantial evidence.
>
> (2) The decision is unsupported by substantial evidence as the ALJ failed to explain the discrepancies between the RFC and the opinions of the state agency consultant.

(ECF No. 21 at 3).

### III. Background

#### A. Relevant Medical Evidence

The ALJ summarized Prices's health records and symptoms:

> [T]he objective evidence of record fails to support disabling limitations resulting from the claimant's cervical spine impairment. An x-ray examination of the claimant cervical spine, performed on May 25, 2016, revealed flattening of the normal cervical lordosis without subluxation, a degenerative disc change at the C-5 - C6 level, and mild degenerative changes at the C5 - C6 and C6 - C7 levels, with marginal vertebral body osteophyte formation (Ex. 2F/33). The record fails to document that surgical intervention is warranted, and fails to document a history of recurring emergency care or inpatient hospitalizations, due to this impairment.
>
> Further, the objective evidence and clinical findings related to the claimant's asthma fail to support disabling functional limitations, as the record generally documents mild findings and grossly normal physical examinations. Specifically, on May 13, 2016, the

claimant sought treatment due to complaints of difficulty breathing, chest congestion, and a headache; her BMI was assessed as 32.7 (Ex. 1F/5). During a physical examination, no rales were noted, but some in expiratory wheezes were noted bilaterally and anteriorly (Id. at 6). Next, on May 15, 2016, she sought emergency treatment due to a cough, nasal congestion, and sinus discomfort (Ex. 2F/34). Her physical examination yielded normal results, and she was diagnosed with acute bronchitis and an upper respiratory infection (Id. at 35). An x-ray examination of her chest revealed bilateral parahilar peribronchial cuffing that it is typically associated with reactive airway disease or bronchitis (Id. at 38).

While the claimant sought treatment on March 21, 2017 for asthma, a physical examination indicated normal musculoskeletal and respiratory findings, except for wheezing (Ex. 2F/24). She was diagnosed with asthma (Id. at 29). In June of 2017, she sought treatment due to complaints of asthma and a cough (Ex. 2F/18). A Review of Systems was positive for shortness of breath, a cough, and wheezing (Id.). However, a physical examination indicated normal respiratory findings, including no respiratory distress and normal breath sounds (Id. at 19). Additionally, the record notes a normal inspection of the head and neck (Id.). The clinical impression was noted as seasonal allergies and an asthma flare (Id.).

In July of 2017, the record notes that the claimant endorsed problems including moderate persistent asthma, radiculopathy, and muscle spasm (Ex. 1F/2). Moreover, on July 3, 2017, the record documents that she sought emergency care, due to complaints of mild, intermittent dyspnea on exertion, and was noted to have a past medical history of asthma (Ex. 2F/1). A differential diagnosis included asthma; however, the record notes that a physical examination indicated normal findings, including no respiratory distress and a non-tender chest (Ex. 2F/2, 13). An x-ray of the claimant's chest revealed no radiographic evidence of acute cardiopulmonary disease (Id. at 8).

On August 27, 2017, Dr. James Gatton, a medical consultant examiner, evaluated the claimant (Ex. 3F). He noted that the claimant's range of motion examination was without limitation in the cervical spine, lumbar spine, and the upper and lower extremities; additionally, her bilateral fine fingering was noted to be normal (Id. at 14). Moreover, the claimant's physical examination was normal, except decreased strength was noted during right elbow flexion (Id.). While Dr. Gatton noted tenderness to palpation around the right elbow, the record fails to document a

diagnosis to support the claimant's complaints of pain (Ex. 3F/14). She was noted to ambulate with a normal gait, and was able to get on and off the examination table without difficulty, heel and toe walk, and to hop and squat; he also noted that her grip was strong and equal (Id.). Additionally, he performed pulmonary function testing, and opined that the claimant completely understood the test and gave maximal effort (Id. at 9). Moreover, he noted that she was very short of breath in between pre-medication and post-medication attempts (Id.). Further, he opined that the pulmonary function study documented a severe obstruction, with no significant improvement with medication (Id. at 9, 11). However, as discussed above, Dr. Gatton's interpretation that the pulmonary function study was a valid test was incorrect, as the required protocols were apparently not followed, and he failed to evaluate the spirometric tracings as required (See Ex. 3F/9).

Next, on November 1, 2017, the claimant underwent an arterial blood gas study and the results were normal (Ex. 4F/2). Additionally, on February 21, 2018, she underwent pulmonary function testing, but the results were noted to be invalid by Dr. E. Offutt, a medical consultative examiner, due to the claimant's suboptimal effort during testing (Ex. 5F/2-8).

On May 30, 2018, the claimant sought urgent care treatment with complaints of shortness of breath, due to asthmatic symptoms that had persisted for a week (Ex. 6F/21). Her BMI was noted as 29.95 (Ex. 6F/20). She was diagnosed with asthma and allergies (Id. at 22).

Next, the record documents that, on July 2, 2018, the claimant reestablished care at Five Points Primary Care for asthma management, and was diagnosed with mild intermittent asthma and obesity (Ex. 7F/9, 11, 13). She reported that she felt much better with occasional use of an Albuterol inhaler (Id. at 11). Her BMI was noted as 32.54 (Id. at 13). Moreover, during an annual gynecological examination performed on August 6, 2018, a physical examination revealed normal pulmonary findings, including no wheezing, equal breath sounds, and nonlabored breathing (Ex. 7F/52). On that date, her BMI was noted as 31.8 (Id. at 59). Further, physical examinations performed in July and September of 2018 noted normal musculoskeletal findings, including normal range of motion in her neck (Ex. 7F/12, 72).

Notably, on November 9, 2018, the record notes the claimant strained her lower back at work while lifting boxes; however, she did not report dyspnea or respiratory problems (Ex. 7F/100). In

fact, her pulmonary examination noted normal effort and breath sounds, and no respiratory distress, no wheezes or rales, and no chest tenderness was documented (Id. at 102). Her BMI was noted as 30.52 (Id.). Moreover, similar pulmonary findings were noted during physical examinations performed on March 8, 2019, March 15, 2019, and April 8, 2019 (Id. at 115, 136, 152). Further, on April 8, 2019, the claimant's neck was noted to be supple, with normal range of motion, and normal musculoskeletal examination findings were noted (Ex. 7F/152).

On May 22, 2019, the claimant sought treatment with complaints of ongoing nasal congestion, sneezing, and occasional wheezing (Ex. 8F/6). She was diagnosed with allergic rhinitis, mild intermittent asthma without complication, and obesity (Id. at 8). Most recently, on May 31, 2019, the claimant reported wheezing frequently at night for about a week; she attributed her symptoms to allergies, endorsed slight dyspnea, and was noted as using Albuterol at night (Ex. 8F/2). Moreover, the record notes that she had no other concerns or complaints (Id.). Notably, her pulmonary and musculoskeletal examinations were completely normal (Id. at 3-4). She was diagnosed with mild persistent asthma without complication and obesity (Id. at 4). However, the record notes that her BMI is not an accurate measure of obesity for the claimant, and she was noted to be overweight (Id. at 4, 8). Moreover, the above-summarized evidence regarding the claimant's neck pain and asthma support the exertional, postural, and environmental limitations found within the above-stated RFC, as the associated symptoms, which tend to wax and wane, are documented as being managed with conservative care.

(ECF No. 9, PageID #: 80–83).

    **B.**    **Opinion Evidence at Issue**

On August 27, 2017, Dr. James Gatton evaluated Price and completed manual muscle testing and a pulmonary function study. (ECF No. 9, PageID #: 393–405). Dr. Gatton found that Price walked with a normal gate and that all of her major joints appeared normal without evidence of inflammation or tenderness. (ECF No. 9, PageID #: 405). Price had 5/5 muscle strength and normal bulk and tone of all major muscle groups. (ECF No. 9, PageID #: 405). Price had a normal range of motion without limitation and was able to get on and off the examination table

unassisted. (ECF No. 9, PageID #: 404–05). Dr. Gatton opined that the pulmonary function study documented a severe obstruction, with no significant improvement with medication. (ECF No. 9, PageID #: 400). Dr. Gatton noted that Price completely understood the test and gave maximal effort. (ECF No. 9, PageID #: 400). He observed the Price was very short of breath between attempts. (ECF No. 9, PageID #: 400). Dr. Gatton opined that Price could walk for two hours and she could be on her feet four to five hours of an eight-hour workday. (ECF No. 9, PageID #: 405). He also suggested that Price could carry less than ten pounds frequently and more than ten pounds on occasion. (ECF No. 9, PAgeID #: 400).

The ALJ considered Dr. Gatton's pulmonary function test and concluded that it was not a valid test. (ECF No. 9, PageID #: 79). She reasoned:

> As per the Instructions For Performing Pulmonary Function Studies For Social Security Disability, at least three (3) acceptable FVC results are required, and each must be smooth, regular, show good initial flow, and be carried out to a definite plateau (at least six (6) seconds and with no volume change in the last two (2) seconds) (Ex. 3F/7). While Dr. Gatton noted that the claimant understood the instructions and gave maximal effort, he failed to evaluate whether the curves were reproducible and whether this was a valid study in the Physician's Interpretations and Comments section of the form that he completed (Id. at 9). Further, his tracings actually show that the three (3) efforts were NOT reproducible, as they did not reach a definite plateau, nor was a flow held at the same rate for the last two (2) seconds (Id. at 11). In fact, the report summary documents only two (2) acceptable maneuvers with no reproducible maneuvers (Id.). Moreover, Dr. Gatton noted that the claimant was very out of breath between maneuvers, but he did not document that he waited for ten (10) minutes between the administration of the bronchodilator and running the post-bronchodilator study; in fact, only eight (8) minutes is noted to have elapsed between pre-medication and postmedication testing (See Ex. 3F/7, 9, 11).

(ECF No. 9, PageID #: 79).

The ALJ then considered Dr. Gatton's opined limitations and found that they were not

persuasive. She explained:

> [S]aid opinions are neither consistent with nor supported by the evidence of record because his physical examination findings, including a normal gait and normal strength, except for the claimant's right elbow, do not fully support his opinion to limit the claimant to sedentary work. Additionally, as discussed above, his interpretation of the validity of the pulmonary function test was incorrect. This also renders his opinion regarding the severity of the claimant's respiratory impairment to be nonpersuasive.

(ECF No. 9, PageID #: 84).

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 2. The claimant engaged in substantial gainful activity during the following periods: January 31, 2019 to the present (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).
>
> 3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.
>
> 4. The claimant has the following severe impairments: degenerative disc disease of the cervical spine and asthma (20 CFR 404.1520(c) and 416.920(c)).
>
> 5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 6. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she could frequently climb ramps and stairs; she could occasionally climb ladders, ropes, and scaffolds; she could occasionally crawl; and she could tolerate occasional exposure to atmospheric conditions, humidity, wetness, and temperature extremes, as defined and rated in the Selected Characteristics of Occupations (SCO).

7

(ECF No. 9, PageID #: 77–78, 80).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R.

§ 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

    **C.**    **Discussion**

Price raises two issues on appeal. First, she argues that the ALJ erred in concluding that she engaged in substantial gainful activity from January 31, 2019 through July 27, 2019. Second, she asserts that the RFC determination is not supported by substantial evidence because the ALJ failed to explain the discrepancies between the RFC and Dr. Gatton's opinions.

    **1.**    **The ALJ Did Not Err in Concluding that Price Engaged in Substantial Gainful Activity**

Price argues that the ALJ erred in concluding that she engaged in substantial gainful activity for a period of time because it was an unsuccessful work attempt. Generally, if a claimant worked for a period of time and earned the amount specified in the regulations, she will be considered to have engaged in substantial gainful activity, precluding disability for that time period. 20 C.F.R. §§ 404.1574(a–b). If, however, the claimant (1) worked for six months or less, (2) her impairment forced her to stop working, and (3) the work was proceeded by at least thirty consecutive days of not working, the work done will be considered an "unsuccessful work

9

attempt" and will not preclude disability. *Id.* § 404.1574(c).

Price worked at Avita Health System from January 31, 2019 through July 27, 2019. She undisputedly earned enough money during this time for it to be considered substantial gainful activity. However, Price notes that her employment lasted less than six months and she asserts that she quit her employment due to her impairment, making the attempt an unsuccessful one. The Commissioner responds that although the period of time Price worked was less than 6 months, Price failed to provide any evidence that she stopped working because of her impairment. Price replies that the ALJ had a duty to develop a full and fair record. She states that she provided the field office a form which stated that Price's job ended because of her impairments and the ALJ failed to develop the issue. The Court disagrees.

Social Security Regulation 84-25—entitled "Determination of Substantial Gainful Activity if Substantial Gainful Activity if Substantial Work Activity is Discontinued or Reduced"—provides:

> In considering why a work effort ended or was reduced to the non-SGA level, we do not rely solely on information from the worker. Therefore, if impartial supporting evidence is not already a part of the claims file, confirmation with the employer is required. If the information from the employer is inconclusive or if none is available, the reason for work discontinuance or reduction may be confirmed with the person's physician or other medical source. After being apprised of the circumstances, the physician or other medical source could state whether, in his or her opinion or according to the records, the work discontinuance or reduction was due to the impairment.

SSR 84-25, 1984 WL 49799, at *3. Price failed to provide any supporting evidence that her work ended because of her impairment. She relies solely on her own statement in a work activity report to support her argument. This is insufficient. *See Kautz v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-244, 2021 WL 3361158, at *3 (S.D. Ohio Aug. 3, 2021) (concluding that the ALJ

10

did not err in finding that the claimant engaged in substantial gainful activity "in the absence of impartial supporting evidence" to the contrary), *report and recommendation adopted*, No. 3:20-CV-244, 2021 WL 4262295 (S.D. Ohio Sept. 20, 2021); *Kimble v. Sullivan*, No. 89 C 7494, 1990 WL 70842, at *6 (N.D. Ill. May 9, 1990) (rejecting the claimant's argument that the ALJ erred by concluding that the claimant engaged in substantial gainful activity where she "offer[ed] nothing more than her own testimony to show that her impairment caused her to be laid off"). Accordingly, the Court concludes that the ALJ did not err in finding that Price engaged in substantial gainful activity and Price's argument is without merit.

### 2. The ALJ Properly Explained Why She Did Not Adopt Dr. Gatton's Opinion

Price asserts that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to explain the discrepancies between the RFC and Dr. Gatton's opinion. Price's argument is really a challenge to the sufficiency of the ALJ's consideration of Dr. Gatton's opinion. At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *Id.* § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id*. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. *Id.* § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support

11

or contradict a medical opinion." *Id.* §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [] and consistency [] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . .").

In relevant part, Dr. Gatton opined that the pulmonary function study he conducted documented a severe obstruction, with no significant improvement with medication. (ECF No. 9, PageID #: 400). He also suggested that Price could walk for two hours of an eight-hour workday, be on her feet four to five hours of an eight-hour workday, and carry less than ten pounds frequently. (ECF No. 9, PageID #: 400). The ALJ found that this opinion was not persuasive.

> [S]aid opinions are neither consistent with nor supported by the evidence of record because his physical examination findings, including a normal gait and normal strength, except for the claimant's right elbow, do not fully support his opinion to limit the claimant to sedentary work. Additionally, as discussed above, his interpretation of the validity of the pulmonary function test was incorrect. This also renders his opinion regarding the severity of the claimant's respiratory impairment to be nonpersuasive.

(ECF No. 9, PageID #: 84).

Price argues that the ALJ "failed to provide an adequate rationale as to why she did not incorporate [Dr. Gatton's] opinion" that Price could only be on her feet four to five hours a day and that Price was limited to carrying ten pounds frequently. (ECF No. 12, PageID #: 621). The Commissioner responds that the ALJ appropriately concluded that Dr. Gatton's opinion was not supported by Dr. Gatton's own findings and were inconsistent with the medical record. The Court agrees. First, the ALJ explained why limiting Price to either the light or sedentary work levels was inconsistent with the medical record when discussing the state agency reviewer's opinions. *See Evans v. Comm'r of Soc. Sec.*, No. 1:19 CV 2895, 2020 WL 6064112, at *13 (N.D. Ohio Oct. 14, 2020) ("While the ALJ must discuss significant evidence supporting his decision and explain his conclusions with sufficient detail to permit meaningful review, there is no

12

requirement that the ALJ incorporate all the information upon which he relied into a single tidy paragraph."). She explained that the records showed that Price's blood gas study results were in the normal range, most of her lung examinations and chest x-rays were also in the normal range, and she had only light intermittent asthma symptoms. (ECF No. 9, PageID #: 84). Price does not dispute these findings and the Court concludes that they provide substantial evidence for the ALJ's determination that the evidence was not consistent with the Dr. Gatton's opinion.

Second, the ALJ explained that Dr. Gatton's opinion was not supported by his own findings of normal strength and gait. The ALJ also relied on the fact that Dr. Gatton's opinion was based on a pulmonary function test that was not valid. As noted above, the ALJ explained that Dr. Gatton failed to evaluate whether the test's curves were reproducible and whether he concluded that it was a valid study. (ECF No. 9, PageID #: 79). In fact, the test actually showed that three of Price's efforts were not reproducible. (ECF No. 9, PageID #: 79). The ALJ additionally noted that Dr. Gatton did not wait for ten minutes between the administration of the medication and running the post-medication study, as was required to be a valid test. (ECF No. 9, PageID #: 79). The fact that the test that supported Dr. Gatton's opinion was not valid is not disputed and the Court concludes that this is substantial evidence for concluding that Dr. Gatton's opinion lacked supportability.

Nonetheless, Price takes issue with the ALJ discounting the opinion based on the validity of the test. Price points out that state agency medical reviewer, Dr. Abraham Mikalov, also noted that the pulmonary test did not appear to be valid. Nevertheless, Dr. Mikalov stated that because the "post BD FEV was above listing level[, i]t is reasonable to assume that [Price] has a moderate to severe COPD condition." (ECF No. 9, PageID #: 147). He then suggested that it was reasonable to limit Price's exertional activities to prevent shortness of breath with exertion. (ECF

13

No. 9, PageID #: 147). Thus, Dr. Mikalov concluded that Price should be limited to walking 4 hours in an eight-hour workday despite the invalid test. (ECF No. 9, PageID #: 147). Price asserts that the ALJ's treatment of Dr. Gatton's opinion was, therefore, based on "faulty" reasons. (ECF No. 12 at 13).

Although it is true that Dr. Mikalov limited Price to walking 4 hours in an eight-hour workday despite an invalid pulmonary test, the ALJ also explained why he did not find Dr. Mikalov's opinion to be persuasive. The ALJ explained that the opinion was neither consistent with nor supported by the updated records received at the hearing level. She explained:

> [T]he evidentiary fails to document a significant respiratory impairment based on any form of valid testing. Contrary to their opinions, the State agency medical consultants noted that the claimant's blood gas study results were in the normal range, as were most of her above-discussed lung examinations and chest x-rays, outside of transient exacerbations. Moreover, the evidence documents the claimant returned to full-time work as a Housekeeper in a hospital (See Exs. 10D/2 & 14D). Consequently, in light of her intermittent asthma symptoms, often classified as "mild asthma" by treating providers, and mild cervical spinal findings, I find that the record, as a whole, supports that the claimant retains the ability to perform work at the medium level of exertion, consistent with the limitations found within the above-stated RFC.

(ECF No. 9, PageID #: 84). Thus, the ALJ explained why she did not adopt Dr. Mikalov's opinion. Not only was there no valid test to document the impairment, but also the record showed normal medical findings, the ability to do full-time work, and light intermittent asthmas symptoms. Price does not dispute—or even acknowledge—these findings. This provides substantial evidence to support the ALJ's decision not to adopt the limitations opined by both Dr. Mikalov and Dr. Gatton. Moreover, contrary to Price's contention, the ALJ did explain why she did not incorporate Dr. Gatton's proposed limitations. Accordingly, the Court concludes that the Price's second argument is without merit.

VI. **Conclusion**

Based on the foregoing, the Court AFFIRMS the Commissioner's final decision denying Price DIB and SSI.

**IT IS SO ORDERED**

Dated: August 8, 2022

                                                  *s/ Carmen E. Henderson*
                                                  CARMEN E. HENDERSON
                                                  U.S. MAGISTRATE JUDGE